1  Joshua D. Gruenberg (163281)
   Susan M. Swan (241503)
2  LAW OFFICE OF
   **JOSHUA D. GRUENBERG**
3  2169 FIRST AVENUE
   SAN DIEGO, CALIFORNIA 92101
4  PHONE: (619) 230-1234; FAX:  (619) 230-1074

5  Attorneys for Plaintiff,
   **PETER ELKIN**
6
                    UNITED STATES DISTRICT COURT
7                  SOUTHERN DISTRICT OF CALIFORNIA

8  PETER ELKIN, an individual,              Case No.  **'11 CV 0680 L      WVG**

9                  Plaintiffs,              PLAINTIFF'S COMPLAINT FOR:
                                            1. AGE DISCRIMINATION
10        v.                                   [29 U.S.C. §633a ];
                                            2. WRONGFUL TERMINATION
11 RAY MABUS and DOES 1 through 25,            [29 U.S.C. §633a];
   Inclusive,                               3. INTENTIONAL INFLICTION OF
12                                             EMOTIONAL DISTRESS.
                  Defendants.
13                                          **[JURY TRIAL DEMANDED]**

14

15

16 COMES NOW THE PLAINTIFF, alleging against Defendants as follows:

17        **GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

18 1.     Plaintiff, PETER ELKIN (hereinafter "ELKIN" or "Plaintiff") is, and at all times herein

19        mentioned was, a resident of the County of San Diego in the State of California.

20 2.     Marine Corps Community Services ("MCCS") is a division of the Marine Corps, which is

21        a division of the United States Navy.

22 3.     Ray Mabus is Secretary of the United States Navy.

23 4.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as

24        DOES 1 through 25 and therefore sues these Defendants by such fictitious names.

25        Plaintiff will amend this Complaint to allege the true names and capacities when they are

26        ascertained.

27 5.     Plaintiff believes and thereon alleges that each fictitiously named Defendant is

28        responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries

1   and damages as herein alleged are directly, proximately and/or legally caused by

2   Defendants and all of their acts.

3   6.   Plaintiff believes and thereon alleges that each of these Defendants named herein as

4   DOES are the agents, employers, representatives or employees of the other named

5   Defendants and when performing the acts alleged herein, were acting within the scope of

6   their agency, employment and/or representative capacity and are therefore responsible for

7   the acts complained of herein.

8   7.   At all times mentioned herein, 29 United States Code §621 et seq., was in full force and

9   effect and was binding on Defendant.

10   8.   The actions of Defendant against Plaintiff constitute unlawful employment practices in

11   violation of multiple sections of 29 United States Code §621 et seq., as herein alleged,

12   and have caused, and will continue to cause, Plaintiff loss of earnings.

13   9.   The tortious acts and omissions alleged to have occurred herein were performed by

14   management level employees.

15   10.   Defendants committed these acts alleged herein maliciously, fraudulently, and

16   oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an

17   improper and evil motive amounting to malice or despicable conduct.  Alternatively,

18   Defendants' wrongful conduct was carried out with a conscious disregard for Plaintiff's

19   rights.

20   11.   Defendants' conduct warrants the assessment of punitive damages in an amount sufficient

21   to punish Defendants and deter others from engaging in similar conduct.

22   12.   Plaintiff seeks compensatory damages, punitive damages, costs of suit herein, and

23   attorneys' fees.

24

25                  **SPECIFIC FACTUAL ALLEGATIONS**

26   13.   Plaintiff is a sixty-seven year old male.

27   14.   Plaintiff began working at MCCS in November 1997.

28   15.   At MCCS, Plaintiff served as the Director of the Camp Pendleton Semper Fit Division,

1    which provides recreation facilities and services to Camp Pendleton Marines and their

2    families.

3  16.   Plaintiff rebuilt the department, and recruited, trained, and supervised 320 employees.

4    Plaintiff and his staff created a base-wide Single Marine Program that served in excess of

5    17,000 young Marines and Sailors in fiscal year 2009, and five Single Marine Recreation

6    Centers that had a combined door count of over 264,000 during fiscal year 2009. Each

7    center provides dozens of computers, printers, numerous televisions, recreational

8    equipment, barbeque facilities, movies, videos, and computer gaming devices.  Some

9    facilities house movie theaters, music rooms, and climbing walls.

10 17.   Plaintiff was responsible for the operation of thirteen fitness centers, five Single Marine

11    recreation centers, two auto skills centers, a hobby shop, a bowling center, a golf course,

12    two recreational beaches with 100 beach rental cottages and 275 recreational vehicle sites,

13    two swimming pools, ocean lifeguard services, a marina and rental boats, a base-wide

14    health promotion program with three separate offices, three ticket and tour sales offices, a

15    travel agency, a skeet and trap range, a pistol range, two recreational gear issue locations,

16    a stables providing boarding facilities, lessons and trail rides, a Base movie program, an

17    intramural sports program, varsity sports, and youth sports.

18 18.   Plaintiff served as a liaison for military commanders for a 200 square mile area.

19 19.   Throughout Plaintiff's employment, he performed his job highly competently, as

20    evidenced by his performance evaluations prior to July 2010, and by commendations from

21    his MCCS supervisors, colleagues and patrons.

22 20.   Under Plaintiff's direction, Camp Pendleton Semper Fit achieved twelve consecutive

23    years of managing its annual operations budget with a positive variance (compared to

24    budget goal at year end).

25 21.   On Plaintiff's information and belief, Plaintiff's division was the only Semper Fit

26    Division in the Marine Corps to achieve this.

27 22.   During Plaintiff's tenure, Camp Pendleton Semper Fit created a Health Promotion

28    program.  This program served more than 73,000 military and family members during

1    2009 fiscal year.

2  23.    During Plaintiff's tenure, he negotiated and produced numerous and varied special events,

3        including three major multiple artist concerts which entertained between 25,000 and

4        35,000 each.  One concert, Rockin' the Corps, was nationally televised.  As a result of

5        Plaintiff's negotiations, all active duty military, their families, military retirees and base

6        employees were admitted free to all events.

7  24.    Lee Farmer, MCCS Assistant Chief of Staff, repeatedly referred to Plaintiff as "Henry

8        Kissinger," because of Plaintiff's ability to communicate, mediate, and negotiate.

9  25.    During Plaintiff's tenure, he supervised the expenditure of $120,000,000.00 in

10        congressionally-appropriated (restricted use) funds.

11  26.    In or around 1997, and continuing until 2009, Plaintiff received "Highly Competent"

12        Annual Performance Reviews.  "Highly Competent" is the highest possible rating.

13  27.    In or around February 2010, MCCS decided to not renew contracts with three independent

14        contractors who provided riding lessons at MCCS stables.  Prior to this decision, Plaintiff

15        urged Farmer to warn Col. Marano, Base Commanding Officer, that stable patrons would

16        react negatively to the non-renewals.  In fact, the decision caused significant controversy

17        and attention among stable patrons.

18  28.    In or around February 2010, in a meeting with Plaintiff and Farmer, to discuss stable

19        patrons' negative reaction to the non-renewal of the contracts, Col. Marano asked Plaintiff

20        if he had anticipated the negative reaction.  Plaintiff answered that he had.  Col. Marano

21        then asked Plaintiff why he had not warned Col. Marano.  Farmer failed to admit that

22        Plaintiff had advised Farmer to warn Col. Marano.  Farmer allowed Plaintiff to accept the

23        blame from Col Marano.

24  29.    On or about March 19, 2010, Plaintiff received his 13th Annual Performance Review.

25        a.    Per Plaintiff's Performance Review, he "met" or "exceeded" all of his assigned

26             goals, and all of his "critical elements."

27        b.    Plaintiff also "met" or "exceeded" all of his additional performance evaluation

28             factors, with the exception of the "Adaptability/Flexibility" factor.

c.   Joyce Mohrlock, First Assistant to Farmer, claimed that Plaintiff was "out of tune" with MCCS, and "has taken on the role of being resistant to change and does not look forward with new ideas," and must "embrace change" and "re-energize SFD programs with new ideas."

d.   As Plaintiff noted on his Review, his Mid Year evaluation did not mention any of Plaintiff's alleged deficiencies.  The purpose of a Mid Year review is to alert an employee to any areas that require improvement so that improvement can be achieved by the close out of the Annual Performance Review.

e.   Plaintiff refused to sign his Review, due to the above-stated reasons.

30.   In or around May 2010, Lane Jones was promoted to Deputy Director of MCCS, and became Plaintiff's new direct supervisor.

31.   On or about May 27, 2010, Farmer and Jones summoned Plaintiff to a meeting.  Farmer and Jones told Plaintiff that they were transferring the direct responsibility for the Bowling Center and the Golf Course from Semper Fit, Plaintiff's division, to another division.  Under Plaintiff's leadership, his division adapted to this change.

32.   Farmer and Jones also told Plaintiff that they were moving Plaintiff's APF Fund Administrator to another division.  Under Plaintiff's leadership, his division adapted to this change.

33.   Farmer and Jones repeatedly told Plaintiff that other changes were coming, and that Plaintiff needed to be open to change and to "new ways of thinking."

34.   Jones concluded the meeting by stating to Farmer that he "ha[d] received total cooperation from Pete in regards to any instructions or directives that [he] had sent [Plaintiff's] way" and that he "found [Plaintiff] nothing but cooperative and enthusiastic to work with."

35.   On Plaintiff's information and belief, in or around 2008, in Farmer's office after an MCCS Director's meeting, Farmer told Jones, referring to MCCS Directors, "Can you believe the ages and lack of energy in that room?"

36.   In or around 2010, Farmer repeatedly told Plaintiff that Semper Fit had been successful,

but now needed to "embrace change" and "find new and innovative methods of operation." Farmer encouraged Plaintiff to disregard any past operational successes, and to instead "think out of the box and in new ways." Plaintiff repeatedly and consistently stated that he was open to change.

37. When Plaintiff asked for specific examples of "embracing change," FARMER and JONES could only provide one example: when asked by an area colonel to convert a small facility into a recreation area for Single Marines, Plaintiff should not try and evaluate and improve the big picture, but should "just do it."

38. In or around June 2010 through Plaintiff's unlawful termination, Plaintiff was excluded from plans and meetings to establish new facilities at Del Mar Recreational Beach, and to establish a new water park feature at Lake O'Neill. Plaintiff was responsible for the operation of both facilities. Plaintiff was unaware that plans were being developed without his involvement.

39. On Plaintiff's information and belief, Pat Heath, MCCS Marketing Director, and Steve Mouser, MCCS Logistic Director, attended the meetings, and were surprised and disturbed by the exclusion of Plaintiff.

40. On or about July 2, 2010, Plaintiff received his 2010 Performance Plan from Jones, also signed by Farmer. Because the Plan was provided late, Jones included a Mid-Year Performance Update, which stated, "Mr. Elkin has demonstrated a professional and corporative [sic] approach to conducting business. I'm very pleased with Mr. Elkins [sic] performance year to date. While goals for 2010 have only recently been established, I'm confident in his ability to accomplish each by year end."

41. On or about August 11, 2010, Farmer unwarrantedly abolished Plaintiff's authority and responsibility to establish a new Marine Recreation Center. Plaintiff supervised all Marine Recreation Centers at Camp Pendleton, and had plans to build several others.

42. In or around the week of August 23, 2010, in violation of MCCS practices, Jones sent emails to Plaintiff's subordinates, without copying Plaintiff. Plaintiff requested that Jones copy Plaintiff on any emails to Plaintiff's staff, so Plaintiff could be aware of projects in

his department.  Jones responded that this was "not necessary."

43.    On or about August 25, 2010, Plaintiff scheduled a meeting with Farmer and Jones to discuss Farmer's unwarrantedly abolishing Plaintiff's authority and responsibility to establish a new Marine Recreation Center. During the meeting, Farmer became very agitated.  He gestured angrily, and repeatedly shouted at Plaintiff, "now listen to me."

44.    Farmer stood up from his chair, pointed at the door and said, "Let's go right now." Plaintiff assumed Farmer was going to take Plaintiff to the Base Commanding Officer. Plaintiff reiterated to Farmer that he was talking in a normal tone of voice, and requested that they discuss the issue "like gentlemen."  Plaintiff eventually asked Farmer if he saw Plaintiff continuing as a member of his organization.  Farmer answered, "Frankly no."

45.    On or about August 27, 2010 Jones presented Plaintiff with a 14 Day Advance Notice of Removal from Employment.  Jones directed Plaintiff to leave the base immediately.  The notice alleges that Plaintiff raised his voice "to the point of shouting, and [he] punctuated [his] comments with aggressive finger pointing and gestures toward [Farmer}," and was disrespectful toward Farmer.  The notice also alleges "declining performance during the past two to three years."

46.    The true facts are that Plaintiff's tone and gestures were conversational.  The true facts, as reflected in Plaintiff's performance evaluations, are that Plaintiff's performance did not decline.  The true facts are that Defendant discriminated against and harassed Plaintiff on the basis of his age.

47.    On or about September 10, 2010, Plaintiff received a letter of termination.  The letter states that Plaintiff was terminated for "insubordinate behavior" toward Farmer.

48.    On Plaintiff's information and belief, this is false.  The true facts are that Defendant terminated Plaintiff on the basis of his age.

49.    As a result of Defendant's unlawful conduct, Plaintiff has suffered insomnia, high blood pressure, depression, and humiliation, and loss of benefits.

50.    On or about December 14, 2010, Plaintiff filed his Notice of Intention to Sue with the Equal Employment Opportunity Commission, Office of Federal Operations.

1

2                             **FIRST CAUSE OF ACTION**

3                                    **AGE DISCRIMINATION**

4                       **(29 United States Code § 621 <u>et</u> <u>seq.</u>)**

5 51.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in

6          the preceding paragraphs as though fully set forth herein.

7 52.     Plaintiff believes and thereon alleges Defendants discriminated against him based on his

8          age, as set forth herein.  Such actions are in violation of 29 United States Code sections

9          621 <u>et</u> <u>seq.</u>, and have resulted in damage and injury to Plaintiff, as alleged herein.

10 53.     As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has

11          sustained and continues to sustain substantial losses in income, reputation, promotions,

12          and other employment opportunities.

13 54.     As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has

14          suffered and continues to suffer humiliation, emotional distress, loss of reputation, and

15          mental and physical pain and anguish, including miscarriage, all to his damage in a sum to

16          be established according to proof.

17 55.     As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled

18          to recover punitive and exemplary damages in an amount commensurate with each of

19          Defendants' wrongful acts and sufficient to punish and deter future similar reprehensible

20          conduct.

21 56.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

22

23                             **SECOND CAUSE OF ACTION**

24                          **WRONGFUL TERMINATION**

25                **(29 United States Code § 621, <u>et</u> <u>seq.</u>)**

26 57.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in

27          the preceding paragraphs as though fully set forth herein.

28 58.     Plaintiff believes and thereon alleges that Plaintiff believes and thereon alleges

1   Defendants terminated him based on his age, as set forth herein.  Such actions are in

2   violation of 29 United States Code sections 621 et seq., and have resulted in damage and

3   injury to Plaintiff, as alleged herein.

4   59.   As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has

5   sustained and continues to sustain substantial losses in reputation, promotions, and other

6   employment opportunities.

7   60.   As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has

8   suffered and continues to suffer humiliation, emotional distress, loss of reputation, and

9   mental and physical pain and anguish, including miscarriage, all to his damage in a sum to

10   be established according to proof.

11   61.   As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled

12   to recover punitive and exemplary damages in an amount commensurate with each of

13   Defendants' wrongful acts and sufficient to punish and deter future similar reprehensible

14   conduct.

15   62.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

16

17   **THIRD CAUSE OF ACTION**

18   **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

19   **(Against All Defendants)**

20   63.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in

21   the preceding paragraphs as though fully set forth herein.

22   64.   Defendants' intentional conduct, as stated herein, was outrageous and done for the

23   purpose of causing Plaintiff to suffer humiliation, mental anguish and emotional and

24   physical distress.

25   65.   Defendants intended to cause Plaintiff to suffer emotional distress, or acted with reckless

26   disregard of the probability that Plaintiff would suffer emotional distress, knowing that

27   Plaintiff was present when the conduct occurred.

28   66.   As a proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress,

1   including, but not limited to, loss of sleep, extreme stress, anxiety, humiliation, and

2   mental anguish.

3

4   **WHEREFORE**, Plaintiff prays for the following relief:

5       1.    For compensatory damages, including loss of wages, promotional opportunities,

6               benefits and other opportunities of employment, according to proof;

7       2.    For special damages, including lost earnings and medical bills, in an amount

8               according to proof;

9       3.    For punitive damages in an amount necessary to make an example of and to

10              punish defendants, and to deter future similar misconduct;

11      4.    For mental and emotional distress damages;

12      5.    For back pay, front pay and other monetary relief;

13      6.    For waiting time penalty, interest, costs, and attorney's fees;

14      7.    For costs of suit herein;

15      8.    For an award of interest, including prejudgment interest, at the legal rate;

16      9.    For such other and further relief as the Court deems proper and just under all the

17              circumstances.

18

19  **PLAINTIFF PETER ELKIN** demands a jury trial on all issues in this case.

20

21  DATED: April 5, 2011            **LAW OFFICE OF JOSHUA D. GRUENBERG**

22

23                    //ss// Joshua D. Gruenberg
                  JOSHUA D. GRUENBERG

24                    SUSAN M. SWAN
                  Attorneys for Plaintiff,

25                    **PETER ELKIN**

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28